1  CRAIG G. MARGULIES (SBN 185925)
   *Craig@MarguliesFaithLaw.com*
2  NOREEN A. MADOYAN (SBN 279227)
   *Noreen@MarguliesFaithLaw.com*
3  **MARGULIES FAITH LLP**
   16030 Ventura Boulevard, Suite 470
4  Encino, CA  91436
   Telephone: (818) 705-2777
5  Facsimile:  (818) 705-3777

6  Attorneys for Creditor, Darren Kessler

7

8              **UNITED STATES BANKRUPTCY COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
9              **SAN FERNANDO VALLEY DIVISION**

10  In re                                  Case No.:  1:19-bk-11696-VK

11  PETER SELTZER,                         Chapter 7

12                            Debtor.      Adv. No.: 1:19-ap-01151-VK

13

14  DARREN KESSLER,                        **PLAINTIFF DARREN KESSLER'S
                                            OPPOSITION TO DEFENDANT / DEBTOR
15                             Plaintiff,   PETER SELTZER'S MOTION TO DISMISS
                                            COMPLAINT FOR THE DENIAL OF
16  v.                                      DISCHARGE**

17  PETER SELTZER,
                                           Hearing:
18                            Defendant.   Date:    April 29, 2020
                                           Time:    2:30 p.m.
19                                         Place:   Courtroom 301
                                                    United States Bankruptcy Court
20                                                  21041 Burbank Blvd
                                                    Woodland Hills, CA 91367
21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**                                                    **Page**

I.    INTRODUCTION .................................................................................................1

II.   SUMMARY OF FACTS THAT MUST BE ACCEPTED AS TRUE ..........................3

III.  THE LEGAL STANDARD GOVERNING A RULE 12(b)(6) MOTION

      TO DISMISS ....................................................................................................7

IV.   ARGUMENT ......................................................................................................8

   A.  The Allegations of the Complaint are Sufficient to Establish a Plausible

       Claim for Relief with Respect to the Non-Dischargeability of

       Kessler's Debt .............................................................................................10

   B.  The Allegations of the Complaint are Sufficient to Establish a Claim for

       Relief with Respect to the Denial of Debtor's Discharge ...............................13

V.    CONCLUSION ..................................................................................................16

# TABLE OF AUTHORITIES

**CASES**                                                                    **Page**

Ashcroft v. Iqbal,
   556 U.S. 662 (2009) ................................................................7

Atlantic Corp. v. Twombly,
   550 U.S. 544, 570 (2007) ......................................................7

Bennett v. Schmidt,
   153 F.3d 516, 518 (7th Cir. 1998) ..........................................9

Classic Auto Refinishing v. Marino (In re Marino),
   37 F.3d 1354, 1357 (9th Cir. 1994) .......................................10

Fanucchi & Limi Farms v. United Agri Products,
   414 F.3d 1075, 1082 (9th Cir. 2005) .......................................9

Fritz v. Charter Twp. Of Comstock,
   592 F.3d 718, 722 (6th Cir. 2010) .........................................10

Hensley Mfg. v. ProPride, Inc.,
   579 F.3d 603, 609 (6th Cir. 2009) .........................................10

Lazy Y Ranch Ltd. v. Behrens,
   54 F.3d 580, 588 (9th Cir. 2008) ...........................................8

Moss v. United States Secret Service,
   572 F.3d 962, 969 (9th Cir. 2009). .........................................7

Sparrow v. United Air Lines, Inc.,
   216 F.3d 1111, 1113 (D.C. Cir. 2000) ....................................9

Polich v. Burlington Northern, Inc.,
   942 F.2d 1467, 1472 (9th Cir. 1991) ......................................8

United States v. SmithKline Beecham, Inc.,
   245 F.3d 1048, 1052 (9th Cir. 2001) ......................................8

**<u>STATUTES</u>**                                                                            **Page**

11 U.S.C. § 523 ...................................................................................................9

11 U.S.C. § 523(a)(2) ........................................................................................11

11 U.S.C. § 523(a)(2)(A)...................................................................................10

11 U.S.C. § 523(a)(4)(a) ...................................................................................11

11 U.S.C. § 523(a)(6) ........................................................................................13

11 U.S.C. § 727 ...................................................................................................9

11 U.S.C. § 727(a)(2) ..................................................................................13, 15

11 U.S.C. § 727(a)(4) ........................................................................................14

11 U.S.C. § 727(a)(5) ........................................................................................15

11 U.S.C. § 1112(b)..............................................................................................1

**<u>RULES</u>**                                                                                **Page**

Federal Rule of Civil Procedure 12(b)(6) .............................................1, 2, 7, 8

Federal Rule of Civil Procedure 15(a)(2) .......................................................8

1   **TO THE HONORABLE VICTORIA S. KAUFMAN, UNITED STATES BANKRUPTCY**

2   **JUDGE; AND DEFENDANT AND HIS COUNSEL OF RECORD:**

3        Plaintiff Darren Kessler ("Plaintiff" or "Kessler") respectfully submits this

4   Memorandum of Points and Authorities in opposition to "Defendant's Notice of Motion

5   and Motion to Dismiss Complaint" (the "Motion", Dkt. no. 5), filed by Debtor / Defendant,

6   Peter Seltzer ("Debtor" or "Defendant") under Fed. R. Bank. P. 7012 and Fed R. Civ. P.

7   12(b)(6). As detailed below, the Motion lacks all merit, and Plaintiff submits that the

8   Motion should be denied in its entirety.

9                                   **I.**

10                          **INTRODUCTION**

11        The first sentence of the Statement of Facts to the Motion reveals that the Debtor

12   is the "owner and principal of Resurgent Business Consulting LLC."  *See* Motion, 11:1-2.

13   Without reading anything further, this statement in and of itself should prompt the Court

14   to deny the Motion in its entirety, and potentially even grant summary judgment in favor

15   of the Plaintiff, as it reveals yet another entity which the Debtor failed to disclose on his

16   schedules., which schedules and amended schedules were all executed by the Debtor

17   under penalty of perjury.

18        As the Court likely recalls when it entered the Order converting the Chapter 11

19   case to a Chapter 7 case,[1] the Debtor filed his original bankruptcy schedules

20   intentionally omitting nine (9) entities that he was the 100% owner.  Then, two months

21   later when he filed amended schedules (only because Plaintiff conducted massive

22   discovery and uncovered the Debtor's intentional and fraudulent omissions) did the

23   Debtor disclose an additional nine entities that he owned and controlled.  Now, the

24   Debtor discloses yet another entity that he failed to list in his schedules and amended

25   schedules.

26   ///

27

28   _____
[1] See "Order Granting Creditor Darren Kessler's Motion to Convert Chapter 11 Case to
Chapter 7 Pursuant to 11 U.S.C. § 1112(b)", Dkt. no. 98, "Conversion Order".

The remainder of the Motion: (1) is boilerplate language of the rules governing 12(b)(6) motions in general and provides no plausible explanation why the claims should be dismissed; (2) simply provides improper, conclusory sentences asserting that the Complaint fails to meet the Rule 9 fraud pleading requirements; and (3) ignores the detailed facts in the underlying Complaint (and as this Court found meritorious in entering the Conversion Order) regarding the Debtor's numerous intentional and knowing misrepresentations, omissions and outright falsehoods in his schedules (including his amended schedules), and his intentional concealment of monies, transfers and many bank accounts from this Court and creditors – all which articulate and support why the Debtor should not be entitled to a discharge.

The Motion woefully ignores the detailed factual allegations in the Complaint demonstrating that the Debtor failed to disclose the total extent of insurance proceeds received and expended without bankruptcy court authority, the complete extent of his voluminous business interests, the millions of dollars the Debtor transferred in the months leading up to the Petition Date to hinder, delay and defraud creditors, including at least $275,000 in the 3 months pre-Petition Date, and the evidence regarding the Debtor's income received from his interests in various business entities.

Most tellingly, the Motion ignores the fact that none of this information would not have come to light, if not for Kessler's various 2004 motions, granted by this Court, which revealed the true extent of Debtor's financial condition.

The allegations in the Complaint and associated exhibits must be taken as true evidence of the cumulative and continuous pattern of the Debtor's tortious conduct regularly commingling, depositing, disbursing and transferring funds of the Debtor among and between his various business entities.

Even after the bankruptcy filing, the Debtor continued such behavior severely detrimental to this Estate and creditors (including Kesler), as evidenced by the Trustee's Motion for Contempt and the Debtor's failure to comply with the Conversion Order, failure to cooperate with the Trustee and her counsel,  and failure to turnover all funds

1  held in the DIP accounts as of the conversion date – funds which are still outstanding

2  and owing to the Trustee.

3      The Motion to Dismiss is baseless, and without any merit.  It is merely a method

4  for the Debtor to cause needless delay and further expense to the Plaintiff.  Plaintiff

5  respectfully requests that the Motion be denied in its entirety, with prejudice.  In the

6  alternative the Court finds any merit to any relief sought in the Motion, then Plaintiff

7  requests leave to amend the Complaint.

8                                    **II.**

9              <u>**SUMMARY OF FACTS THAT MUST BE ACCEPTED AS TRUE**</u>

10     The relevant factual contentions of the complaint (the "Complaint", Adv. Dkt. No.

11  1), must be taken as true and interpreted in the light most favorable to the Plaintiff.

12  *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 981 (9th Cir. 2017).  They are summarized

13  here below.

14     On July 9, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief

15  under chapter 11 of the Bankruptcy Code, commencing the Bankruptcy Case. *See*

16  *Complaint, ¶ 7* Prior to the Petition Date, the Debtor executed and delivered a written

17  promissory note, agreeing to borrow and subsequently pay back the sum of $800,000

18  (the "May Note"). *Id., ¶¶* 8-9.  Shortly thereafter, the Debtor and Plaintiff agreed to modify

19  the May Note, and entered into a new written promissory note, whereby the Debtor

20  agreed to personally repay to the Plaintiff the sum of $800,000, as well as an equity

21  interest in ACC Enterprises, LLC. by October 1, 2017 (the "October Note"). *Id., ¶¶* 13-15.

22  In August 2015, yet again, the Debtor reaffirmed that he would pay back to the Plaintiff

23  the sums he personally owed to Plaintiff. *Id.* ¶ 17.  The Debtor defaulted in his

24  performance of the October Note by failing to pay the note in full when due. *Id.* ¶ 18.

25     The allegations describe, *inter alia*, that the Debtor intentionally failed to file

26  accurate bankruptcy schedules, including false amended schedules filed over two

27  months later (only due to accurate information discovered by Kessler from non-debtor

28  parties), filed tardy and inaccurate Monthly Operating Reports (MORs), and improperly

                                    3

transferred funds both pre- and post-Petition Date.  All of the Debtor's actions and inactions were done to hinder, delay and defraud the Bankruptcy Estate, the Court, and creditors (including Kessler).

With respect to the Debtor's inaccurate schedules, he only filed Amended Schedules once the Plaintiff filed multiple 2004 motions and received documents which revealed the Debtor's true financial position. *Id.* ¶ 38. Indeed, this Court noted this fact as part of the Court's findings of fact in entering the Conversion Order.  In total, the Debtor's Amended Schedules disclosed the following, which were not included in the Original Schedules:

    a.  Transfer of $50,000 to Brian Burr (Schedule A/B, Item 30)

    b.  Four of Debtor's litigation claims against third parties (Schedule A/B, No. 33)

    c.  Amended Statement of Financial Affairs ("Amended SOFA") – Item 4 - $6,850 gross income in the last calendar year for operating a business

    d.  Amended SOFA – Item 5 - $150,000 received in the last year from a legal settlement

    e.  Amended SOFA – Item 15 - $300,000 in claimed property damaged in the November 2018 Woolsey fire

    f.  Amended SOFA – Item 18: Two transfers including a $550,000 transfer to Neil Harris in February 2019 as an alleged "business investment" to be repaid and $50,000 transfer to Brian Burr "temporarily" in May 2019

    g.  SOFA – Item 27 – the Debtor disclosed ***an additional nine (9) businesses*** in which he had an interest within the 4 years prior to the Petition Date that he omitted from his original Schedules.  (These amended disclosures ***do not*** list an entity known as, "Resurgent Business Consulting LLC", which the Debtor just disclosed for the first time in his Motion. *Id.* at ¶ 40.

The Debtor also tardily filed almost every Monthly Operating Report, as evidenced by the Chart below.

| Monthly MOR | Date Filed | Approx. Amount of Time Late-Filed |
|---|---|---|
| July 2019 MOR | Sept. 18, 2019 | 33 days late |
| Amended July 2019 | Nov. 15, 2019 | 3 months late |
| Aug. 2019 | Sept. 25, 2019 | 10 days late |
| Amended Aug. 2019 | Nov. 15, 2019 | 2 months late |
| Sept. 2019 | Nov. 15, 2019 | 2 months late |
| Oct. 2019 | Nov. 15, 2019 | n/a |
| Nov. 2019 | Dec. 16, 2019 | 1 day late |

The July and August MORs reflect that the Debtor retained an account under the name of 2305 LLC, as well as under Indiana Texas Management, neither of which were designated "debtor-in-possession" accounts.  The Debtor owned and controlled these entities and accounts, and used both accounts to transact for general personal expenses (i.e. gas, restaurants, travel, utilities, car payments, etc.) without any oversight by the United States Trustee or authorization from this Bankruptcy Court (due to the Debtor's intentional omission from his Schedules and non-disclosure). *Id.* at ¶ 43.

The September and October 2019 MORs reflect, among other things, that the Debtor:

- On September 11, 2019 (post-Petition Date), Debtor received an alleged insurance proceeds' check in the amount of $134,162.70;

- On September 23, 2019, the Debtor made a cash withdrawal of $9,510 with no explanation provided (rendering the 2305 LLC account closed);

- On September 12, 2019, the Debtor closed his Wells Fargo debtor in possession (DIP) account and opened a new account at Union Bank;

- On September 19, 2019, the Debtor paid $15,000 to "tactical mitigation" for purported home damage repairs; and

- On October 23, 2019, the Debtor paid an additional $15,000 for/to "price lift" for alleged home repair.

*Id.* at ¶ 47.

1    Plaintiff discovered that the Debtor maintained a bank account, in Debtor's name,

2    at Chase during the pendency of this bankruptcy and immediately prior to the Petition

3    Date that was not disclosed.  *Id.* at ¶ 52.  Specifically, on or about May 21, 2019, the

4    Debtor received over $178,750 in insurance proceeds.  Only $126,000 of these funds

5    were deposited into the DIP account, as the Debtor withdrew $40,000 on May 29, 2019

6    (for "Tactical Mitigation Services"), an additional $9,866.64 on the day prior to the

7    Petition Date, and further $2,832 <u>after</u> the Petition Date on July 23, 2019 (together, the

8    "Insurance Proceed Transfers").  *Id.* at ¶ 53.  The Debtor did not obtain any Court order

9    authorizing the post-petition transfers or use of the Insurance Proceed Transfers.  *Id.* at

10    ¶ 49.

11    The Debtor also has (or had) a Wells Fargo Bank account held in the name of

12    2305 LLC (the "2305 WF Account"), an entity he owned and controlled, which was not

13    disclosed by the Debtor, and only discovered through the information produced by third

14    parties pursuant to Kessler's 2004 Motions.  *Id.* at ¶¶ 55-57.

15    From the 2305 WF Account, the Debtor made the following withdrawals and/or

16    transfers between March 2019 and the Petition Date, none of which were disclosed in

17    the Debtor's Original Schedules or Amended Schedules (together, the "Pre-Petition

18    Transfers"):

19    • March 18, 2019: Wire to ETF Management in the sum of $150,000;

20    • April 19, 2019: Wire to Harris Ritoff in the sum of $100,000;

21    • May 20, 2019: Two withdrawals in the sum of $28,000 and $7,000,

22    respectively; and

23    • May 28, 2019: One withdrawal in the sum of $4,000.

24    *Id.* at ¶ 58.

25    Under penalty of perjury, the Debtor asserts in Amended SOFA No. 4 that the

26    Debtor received $250,000 in income for the calendar year 2018, and no other income,

27    and further asserts in SOFA No. 27 the Debtor's interest in ACG Industries, and the

28    Debtor asserts that it was shut down in 2017.  *Id.* at ¶ 59-60.

A review of the Debtor's Indiana Texas Management Frost Bank statements from March to May 2018 evidence that the Debtor received $905,000 in 2018 from ACG Industries.  This figure is three times (3x) greater than what the Debtor disclosed in the Debtor's Amended SOFA, and evidence that ACG Industries was still operating in 2018, despite Debtor's (false) assertions that it was shut down in 2017.  *Id.* at ¶ 61.  Again, this information was intentionally not disclosed by the Debtor to hinder, delay and defraud the Bankruptcy Estate, the Court and creditors (including Kessler).  This information was only discovered through Kessler's significant expense in seeking and obtaining Court approval of many 2004 motions and examinations of non-debtor, third parties.

The foregoing facts from the Complaint, coupled with the additional factual allegations in the Complaint, as well as the history of the cases and the pleadings on file with the Court, are sufficient to allege claims for relief for both non-dischargeability of Kessler's debt and to deny the Debtor from receiving a Discharge, and to notify the Debtor, as to the circumstances giving rise to the claims in the Complaint.

**III.**

**THE LEGAL STANDARD GOVERNING A RULE 12(b)(6) MOTION TO DISMISS**

To withstand a motion made pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  The requisite degree of plausibility was clarified in *Ashcroft v. Iqbal,* 556 U.S. 662 (2009):

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Id.* at 1949 *(citing Twombly,* 550 U.S. at 556-70).  The Ninth Circuit has further explained the *Iqbal* plausibility standard: "In sum, for a complaint to survive a motion to dismiss, the non- conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Service,* 572 F.3d 962, 969 (9th Cir. 2009).

1    Under Rule 12(b)(6), a court tests the sufficiency of the factual allegations and

2    evaluates whether a plaintiff is entitled to offer evidence to support the claims, not

3    whether a plaintiff will ultimately prevail.  This is true even if "actual proof of those facts is

4    improbable" and "a recovery is very remote and unlikely." *Twombly,* 550 U.S. at 556

5    (internal quotation marks and citation omitted).  The court's "inquiry is limited to the

6    allegations in the complaint, which are accepted as true and construed in the light most

7    favorable to the plaintiff." *Lazy Y Ranch Ltd. v. Behrens,* 54 F.3d 580, 588 (9th Cir.

8    2008).  Courts also are instructed to "draw on [their] judicial experience and common

9    sense" in determining whether the allegations are sufficiently plausible to survive a

10   motion to dismiss. *Iqbal,* 556 U.S. at 679.

11   Although the Complaint and the allegations therein are sufficient for the Claims for

12   Relief plead, Rule 15(a)(2) of the Federal Rules of Civil Procedure states that "[t]he court

13   should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).

14   "Dismissal without leave to amend is improper unless it is clear, upon de novo review,

15   that the complaint could not be saved by any amendment." *Polich v. Burlington Northern,*

16   *Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991). "[L]eave to amend should be granted unless

17   the district court 'determines that the pleading could not possibly be cured by the

18   allegation of other facts.'" *United States v. SmithKline Beecham, Inc.*, 245 F.3d 1048,

19   1052 (9th Cir. 2001) (citation omitted).  To the extent this Court believes further facts

20   should be plead (which Plaintiff respectfully submits no further facts are needed or

21   required), leave to amend should be freely given.

22   **IV.**

23   **ARGUMENT**

24   The Motion to Dismiss does not make any credible argument that the allegations

25   in the Complaint are unclear or do not meet the pleading standards required.  To the

26   contrary, the allegations of fraud taken directly out of the Complaint (and detailed in

27   Section II above), are in fact detailed and specific.  That is, there are specific allegations

28

1  of the Debtor's actions perpetrating a fraud on the Plaintiff, as well as the Court, the

2  Bankruptcy Estate, and all of the Debtor's creditors.

3        As detailed in the Complaint, above and further discussed below, the Debtor

4  intentionally failed to fully disclose the extent of his financial conditions.  The Debtor

5  knowingly made false statements to Plaintiff to induce the loaning of funds and inactions

6  to collect on the funds, including false promises and representations to repay the

7  Plaintiff, which Plaintiff relied upon to his detriment and caused Plaintiff damages.

8  Debtor committed defalcations while acting in fiduciary capacity, as he took distributions

9  from ACC which he failed to account for, failed to repay the obligations to the Plaintiff,

10  and all while he was acting in a fiduciary capacity to creditors, including Kessler.  The

11  Debtor converted Kessler's funds willfully and maliciously, knowing that his actions

12  would damage Kessler.  The Debtor's intentional acts and inactions support allowing the

13  Plaintiff to seek a complaint for non-dischargeability of debt as plead in the Complaint

14  under 11 U.S.C. § 523.

15        Further, the Debtor's schedules, amended schedules, and pleadings filed with the

16  Court, all under penalty of perjury, are knowingly and intentionally filled with inaccuracies

17  and false oaths (including the failure to disclose millions of dollars in pre- and post-

18  Petition Date transfers), as well as an unexplained loss of assets – all of which support a

19  denial of the Debtor's Discharge under 11 U.S.C. § 727.

20        Plaintiff need not prove evidentiary facts or set forth a complete and convincing

21  picture of the alleged wrongdoing: "A complaint is not required to allege all, or any, of the

22  facts entailed by the claim."  *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998)

23  (emphasis in original); *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir.

24  2000); *Fanucchi & Limi Farms v. United Agri Products*, 414 F.3d 1075, 1082 (9th Cir.

25  2005).  Moreover, Rule 8 merely requires a "short and plain statement of the claim

26  showing that the pleader is entitled to relief." But the purpose of notice pleading under

27  Rule 8 is to "give the defendant fair notice of what the plaintiff's claim is and the grounds

28

1  upon which it rests." *Classic Auto Refinishing v. Marino (In re Marino)*, 37 F.3d 1354,

2  1357 (9th Cir. 1994) (internal citations omitted).

3        Allegations that are well-pleaded must only "give notice to the defendant as to

4  what claims are alleged," and must contain "'sufficient factual matter' to render the legal

5  claim plausible, i.e. more than merely possible." *Fritz v. Charter Twp. Of Comstock*, 592

6  F.3d 718, 722 (6th Cir. 2010) (citing *Iqbal*, 556 U.S. 662, at 677 (2009)). 13.

7  Nevertheless, "this standard does not require 'detailed factual allegations.'" *Hensley Mfg.*

8  *v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citing *Twombly*, 550 U.S. at 555).

9  14. "The plausibility standard is not akin to a 'probability requirement,' but it asks for

10  more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at

11  678. 15. "A claim has facial plausibility when the plaintiff pleads factual content that

12  allows the court to draw the reasonable inference that the defendant is liable for the

13  misconduct alleged." *Hensley Mfg.*, 579 F.3d at 609 (quoting *Iqbal*, 556 U.S. at 678)

14  (internal quotation marks omitted).

15      **A.**    <u>**The Allegations of the Complaint Are Sufficient to Establish a**</u>

16          <u>**Plausible Claim for Relief with Respect to the Non-Dischargeability of**</u>

17          <u>**Kessler's Debt**</u>

18        Plaintiff has pled sufficient factual allegations to state a plausible claim that the

19  Debtor's actions and failure to disclose are subject to a non-dischargeability action.

20        **i.**  **First Claim for Relief – Fraud Based Upon False Pretenses, False**

21          **Representations, and Actual Fraud 11 U.S.C. § 523(a)(2)(A)**

22        As outlined in the Complaint and above, the Plaintiff lays out the Debtor's false

23  representations to the Plaintiff, as well as those statements made in pleadings filed with

24  the Superior Court for the State of California, in the State Court Action. Specifically,

25  Kessler attached copies of emails affirming the Debtor's obligations to the Plaintiff.

26        The First Claim for Relief outlines the Debtor's false representation regarding his

27  intent to pay back the $800,000 owed to the Plaintiff, and further his representations

28  regarding the same, including email affirmations and statements made within the State

Court Action.  The written communications between the Plaintiff and Defendant clearly articulate the Plaintiff relied on the truth of such representations, regarding the ability to repay and the viability of the transaction, when lending monies to the Debtor.  The Defendant attempts to argue that no specifics regarding the communications and promises to repay were provided by Kessler, but emails affirming the Debtor's intent to repay are attached to the Complaint, as Exhibit D.

Furthermore, the Complaint articulates that in case commonly known as the Superior Court for the State of California, County of Los Angeles, Case No. 19VECV00346, styled *Darren Kessler v. Pete Seltzer* (the "State Court Action"), and before the Court in that State Court Action, the Defendant unequivocally stated that the company in which Plaintiff was to receive distributions and an equity interest did not even exist at the time Plaintiff was induced to transfer (and did transfer) funds to Defendant.  Such assertions are abundantly clear that the Debtor induced the Plaintiff to execute the May and November Note under false pretenses with the intent to deceive and defraud, especially if no entity was in existence.

Finally, the Complaint outlines that Kessler relied on the Defendant's representations to repay, and the viability of ACC Enterprises, and therefore suffered damages in excess of $800,000 based on such statements.  *See Complaint,* ¶¶ 17, 64-68. As such, Kessler has pled sufficient allegations to support the claims for relief against the Plaintiff under Section 523(a)(2).

**ii.  Second Claim for Relief – Defalcation by a Fiduciary - 11 U.S.C.**
**§523(a)(4)(a)**

The Complaint also outlines specific facts regarding the Second Claim for Relief for defalcation by a fiduciary. Specifically, Kessler has outlined that the Defendant agreed to ensure that the amount at issue was held and agreed to be repaid at a later date. The Debtor's own schedules reveal that the entities which were to provide the payout to Kessler generated enough monies to be paid to Kessler, however, the Debtor who was a fiduciary of such funds failed to ensure payments to Kessler and instead took

the funds for himself.  As such, the Debtor breached his fiduciary duties owed to the

Plaintiff, by failing to account and hold the funds entrusted to him by Kessler, and ensure

repayment to Kessler.  Kessler suffered exemplary damages as a result.

The Defendant's Motion states blindly that there is no trust or fiduciary

relationship between the parties.  The allegations that a fiduciary relationship existed

between the Parties is a factual claim to be taken as true by this Court in the context of

this Motion.  A mere conclusory statement to the contrary by the Debtor is without any

merit for this Motion.  Specifically, the Complaint provides that Plaintiff took possession

of the funds and promised to repay Kessler in a timely manner, as evidenced by the

promissory agreement attached to the Complaint as Exhibit A and B.  Further, as

outlined in paragraphs 75-78 of the Complaint, the Plaintiff alleged that:

- By taking possession of the Principal, Defendant agreed to act as Plaintiff's agent for purposes of ensuring that the Principal was repaid to Plaintiff in accordance with the terms of the May Note and October Note.

- Based upon Debtors Original Schedules and Amended Schedules and bank statements, Defendant received over $90,000 from ACC and $905,000 from ACG which should have rightfully been used by the Debtor to re-pay Plaintiff. Rather than convey the Principal to Plaintiff, Defendant deposited these funds into an account in the name of "Indiana Texas Management."

- The accounts of Indiana Texas Management were controlled by the Debtor.

- While acting in his fiduciary capacity, and in conscious disregard of Plaintiff's rights, Defendant breached his fiduciary duties to Plaintiff by among others, failing to properly accounts for the Principal and refusing to repay the Principal back to the Plaintiff pursuant to the terms of the October Note.

*Id.* at ¶75-78.

Any attempts by Debtor to argue the merits of the claims are not well-taken and

are inappropriate in the Motion.  As such, when looking at the four (4) corners of the

Complaint, and taking such allegations as true, the claim is clearly supported and must stand.

### iii.  Third Claim for Relief – Willful and Malicious Injury by the Debtor to the Property of Another Entity 11 U.S.C. §523(a)(6)

With respect to the claims articulated for willful and malicious injury, the Defendant argues that the Plaintiff has failed to articulate a tort claim, however the Plaintiff alleges at ¶ 89 of the Complaint, the Defendant's "conduct and acts amount to conversion of Plaintiff's property."  The Plaintiff has thus articulated a tortious claim for relief, and further has explained in detail how the Debtor took such funds and used them for his own use and benefit (*see* ¶ 87 of the Complaint), and thereby causing Plaintiff's damages.  Specifically, the Complaint outlines that although the Debtor's schedules reveal that the Debtor received funds from ACC Enterprises (upon which he had control), he failed to turn over such profits to the Plaintiff, which were rightfully owed, thus amounting to conversion of funds.  *Id.* at ¶78.  Defendant exercised control and ownership over the funds owing to Kessler, inconsistent with the real owner's right of possession.  As such, this claim for willful and malicious injury must survive the Motion as well.

### B.    The Allegations of the Complaint are Sufficient to Establish a Claim for Relief with Respect to the Denial of Debtor's Discharge

### i.  Fourth Claim for Relief – Transfer of Property of the Debtor Prior to and after the Petition Date 11 U.S.C. § 727(a)(2)

As outlined in detail within the Complaint and above, the Debtor has made numerous transfers of Property both prior to and after the Petition Date.  Specifically, only after Kessler subpoenaed multiple records was it revealed that the Debtor used two of his wholly owned corporations – 2305 LLC and Indiana Texas Management as his own personal piggy bank. Specifically, the Complaint outlines that within the six (6) months prior to the Petition Date, the Debtor disposed of almost $1 million dollars worth of cash assets, within such a short period of time. *See Complaint*, ¶97.

13

Furthermore, a review of the bank records in this case reveal that from the Debtor's 2305 WF Account, the Debtor made the following withdrawals and/or transfers between March 2019 and the Petition Date, none of which has been disclosed in the Debtor's Original Schedules or Amended Schedules):

- March 18, 2019: Wire to ETF Management in the sum of $150,000;
- April 19, 2019: Wire to Harris Ritoff in the sum of $100,000;
- May 20, 2019: Two withdrawals in the sum of $28,000 and $7,000, respectively; and
- May 28, 2019: One withdrawal in the sum of $4,000.

*Id.* at 58.

The Motion makes no clear or cognizable argument as to why this claim should be denied. Rather, it appears to argue that in some type of "Hail Mary" attempt that all of the above assets and funds were not property of the Estate, because the funds belonged to 2305 and/or Indiana Texas Management – two entities that were wholly owned by the Debtor, and used as Debtor's personal piggy bank during the course of and prior to the Bankruptcy Case.  Finally, Debtor's argument that such transfers were "failed investments" are not supported by any factual basis and are not supported by any legal theory. If they really were failed investments, why were they never listed on the schedules until Kessler obtained and received documents from non-debtor, third parties reflecting such transfers.  As such, this claim for relief should be denied its entirety.

**ii.  Fifth Claim for Relief – Knowing and Fraudulently Made a False Oath**
**- 11 U.S.C. §727(a)(4)**

With respect to this claim for relief, the Defendant's Motion assertions that the Complaint offers no actual facts, but merely the Defendant's own, unsupported "belief" that Defendant did not make a "knowing and fraudulent false oath" is just another example of this Debtor's bad faith with respect to the claims alleged and his behavior in the Bankruptcy Case.  The Debtor made numerous false oaths within his schedules, the amended schedules, at the 341(a), within the MORs, and in his pleadings - each of

which are outlined in detail within the Complaint.  Specifically, the Debtor outlines at

¶101 of the Complaint that the following statements, all made under penalty of perjury,

which were false oaths:

    a.  No income from employment or operation of a business in 2019 (SOFA

       No. 4);

    b.  No payments to insiders within the one year prior to the Petition Date

       (SOFA No. 7-8);

    c.  No gifts within the two (2) years prior to the Petition Date (SOFA No. 13):

    d.  No loss or insurance coverage from theft, fire or other disaster (SOFA No.

       15);

    e.  No transfers within the 2 years prior to the Petition Date (SOFA No. 18)

    f.   No financial institutions closed within the one year prior to the Petition Date

       (SOFA No. 20);

    g.  Only listed an interest in three business entities – ITM (Indiana Texas

       Management), 2305 LLC and Jakdyl LLC (SOFA No. 27).

      The Debtor's failure to list was simply Debtor's attempt to conceal asset and

interests from the Estate's creditors, which rise to the non-dischargeability pursuant to 11

U.S.C. § 727(a)(2).

    iii.  **Sixth Claim for Relief – Failure to Explain Loss of Assets - 11 U.S.C.**
       **§ 727(a)(5)**

      Finally, with respect to this claim for relief, the Defendant's main assertion that the

failure to explain the dissipation of over $100,000 worth of assets is "not a significant

loss."  That is the type of incomprehensible logic that this Debtor operates upon, which

for creditors such as Kessler who are seeking payout of their claims after years and

years of the Debtor's shenanigans, is simply unfathomable.

      This Debtor has still not proved that the monies purportedly spent for "home

repairs" were actually paid for such repairs, which the Plaintiff has pled with specificity,

including the date and amount of various transactions:

a.  August 27, 2019 - $66,010 for "price lift";

b.  September 23, 2019, made a cash withdrawal of $9,510;

c.  September 19, 2019 paid $15,000 to "tactical mitigation"; and

d.  October 23, 2019, paid an additional $15,000 for "price lift" home repair.

*Id.* at 107.

The Debtor's argument that the Defendant simply scraped together the claims is simply not true, as the loss of Estate assets, namely the insurance funds, without any explanation is sufficient grounds for denial of a Debtor's discharge in its entirety.

The Debtor has recently revealed, now in more recent pleadings filed with the Court, that further significant funds are required for home repairs, which further supports the Plaintiff's argument that the insurance funds were dissipated with, and not used for the purposes for which they were intended or as alleged by the Debtor.  As such, the Debtor's argument that the amounts at issue are "not significant" and that the Plaintiff failed to provide sufficient detail and allegations is simply incorrect.

As outlined in the Complaint and above, the Plaintiff outlines the Debtor's false representations to the Plaintiff, as well as the numerous false statements made throughout the course of this Bankruptcy Case, in detail, that do not warrant a dismissal of this Complaint for failure to state a claim.

**V.**

**CONCLUSION**

The Motion to Dismiss filed by Defendant is not well taken.  It is merely a method causing needless delay and further expense to the Plaintiff.   Plaintiff accordingly requests that the Motion be denied in its entirely, with prejudice.   In the alternative that the Court finds any merit to any relief sought in the Motion, then Plaintiff respectfully request an opportunity for leave to amend the Complaint.

DATED:  April 15, 2020

**MARGULIES FAITH, LLP**

*/s/ Craig G. Margulies*
Craig G. Margulies
Noreen A. Madoyan
Attorneys for Creditor, Darren Kessler

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
16030 Ventura Blvd., Suite 470, Encino, CA 91436

A true and correct copy of the foregoing document entitled **PLAINTIFF DARREN KESSLER'S OPPOSITION TO DEFENDANT / DEBTOR PETER SELTZER'S MOTION TO DISMISS COMPLAINT FOR THE DENIAL OF DISCHARGE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 15, 2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**ATTORNEY FOR DEFENDANT: Kathleen C Hipps**    kathleen.hipps@gmlaw.com,
silvia.cerna@gmlaw.com;lorraine.corrales@gmlaw.com
**ATTORNEY FOR PLAINTIFF: Noreen A Madoyan**    Noreen@MarguliesFaithLaw.com,
Helen@MarguliesFaithlaw.com;Vicky@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com
**ATTORNEY FOR PLAINTIFF: Craig G Margulies**    Craig@MarguliesFaithlaw.com,
Vicky@MarguliesFaithlaw.com;Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com
**UST: United States Trustee (SV)**    ustpregion16.wh.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On **April 15, 2020**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**JUDGE:** In accordance with the Administrative Amended Order 20-02, dated 4/1/2020, No Judges' copy will be mailed.
**DEFENDANT**: Peter M. Seltzer – 4179 Prado de la Puma, Calabasas, CA 91302

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 15, 2020 | Vicky Castrellon | /s/ Vicky Castrellon |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.