# United States Bankruptcy Court
# Central District of California
### San Fernando Valley
### Judge Victoria Kaufman, Presiding
### Courtroom 301 Calendar

**Wednesday, April 29, 2020**                                                                                       **Hearing Room    301**

<u>2:30 PM</u>
**1:19-11696    Peter M. Seltzer**                                                                                                **Chapter 7**
Adv#: 1:19-01151         Kessler v. Seltzer

   **#24.00**    Defendant's motion to dismiss complaint for the denial of discharge pursuant to FRCP 12b(6) & FRCP 9(b)

                                   Docket        5

  **Judge:**

    For the reasons discussed below, the Court will grant in part and deny in part the motion.

    **I.**      **BACKGROUND**

    On July 9, 2019, Peter M. Seltzer ("Defendant") filed a voluntary chapter 11 petition, initiating bankruptcy case 1:19-bk-11696-VK. On December 26, 2019, the Court entered an order converting Defendant's bankruptcy case to one under chapter 7 [Bankruptcy Case, doc. 98].

    On December 16, 2019, Darren Kessler ("Plaintiff") filed a complaint against Defendant (the "Complaint"), seeking nondischargeability of the debt owed to him pursuant to 11 U.S.C. §§ 523(a)(2), (a)(4) and (a)(6) and for denial of discharge pursuant to 11 U.S.C. §§ 727(a)(2), (a)(4)(A)and (a)(5). In relevant part, the Complaint makes the following factual allegations:

        On May 20, 2014, Defendant executed and delivered to Plaintiff a promissory note/equity agreement (the "May Note") [Complaint, Exh. A]. Under the terms of the May Note, Defendant borrowed and agreed to pay Plaintiff the principal sum of $800,000 (the "Principal"). The May Note provided that Plaintiff would immediately receive a 14% equity interest in ACC Enterprises, LLC ("ACC"). Defendant was to pay off the Principal upon receipt of payment from ACC. The payments were to be made on a cyclical basis based on disbursement made via K-1 by ACC to Defendant within thirty days of Defendant being paid.

        On October 1, 2014, Defendant and Plaintiff agreed to modify the May Note, and entered into a new promissory note (the "October Note") [Complaint, Exh.

# United States Bankruptcy Court
## Central District of California
### San Fernando Valley
### Judge Victoria Kaufman, Presiding
### Courtroom 301 Calendar

**Wednesday, April 29, 2020**                                                                 **Hearing Room    301**

2:30 PM
**CONT...**     **Peter M. Seltzer**                                                                                **Chapter 7**

B]. The October Note provided that in addition to the previously acquired 14% interest in ACC, Defendant also personally agreed to repay Plaintiff the sum of $800,000 along with an equity interest in the "stock of the makers" [*sic*]. All principal and accrued interest in the October Note was due and payable by October 1, 2017, and the October Note states that repayment of the Principal is "in addition to" the transfer of equity.

On July 10, 2014, Plaintiff transferred $300,000 to ACC Industries, Inc. On November 21, 2014, Plaintiff transferred an additional $500,000 to Defendant's corporation, Jakdyl, Inc. [Complaint, Exh. C]. ACC Industries, Inc. and Jakdyl, Inc. are listed on Defendant's statement of financial affairs, item #27.

On August 18, 2015, Defendant emailed Plaintiff reaffirming that he "anticipate[d] paying [Plaintiff] back $800,000 principle [*sic*] by end of Dec 2015… (Remainder will be paid from Vegas Building $250k)." (the "2015 Email") [Complaint, Exh. D].

Defendant defaulted in his performance of the October Note by failing to pay the note in full when due. Prior to filing the Complaint, Plaintiff made a demand for the balance due on the October Note, but no part of said balance has been paid. Consequently, Plaintiff filed a complaint against Defendant in the superior court for the state of California for breach of contract, money had and received and unjust enrichment.

In statements made in the state court action, Defendant denied executing the May Note and the October Note. Defendant also stated that the company in which Plaintiff was to receive distributions and an equity interest did not exist at the time Plaintiff transferred funds to Defendant. Defendant further stated that the emails affirming his obligation to Plaintiff were "altered." Thus, when Defendant made the representations in the May Note and the October Note, he knew them to be false, and made these representations with the intent to induce Plaintiff to enter into the notes.

After the petition date, Defendant filed his original schedules and statement of financial affairs ("SOFA") [Bankruptcy Case, doc. 10]. Defendant signed his

**United States Bankruptcy Court**
**Central District of California**
San Fernando Valley
Judge Victoria Kaufman, Presiding
Courtroom 301 Calendar

**Wednesday, April 29, 2020**                                                                           **Hearing Room    301**

<u>2:30 PM</u>
**CONT...    Peter M. Seltzer                                                                              Chapter 7**
schedules and SOFA under penalty of perjury as true and accurate.

Defendant's SOFA, listed, among other things: (i) no income from employment or operation of a business in 2019; (ii) no payments to insiders within one year prior to the petition date; (iii) no gifts within the two years prior to the petition date; (iv) no loss or insurance coverage from theft, fire or other disaster; (v) no transfers within the two years prior to the petition date; (vi) no accounts with financial institutions closed within the one year prior to the petition date; and (vii) interest in three business entities – Indiana Texas Management ("ITM"), 2305 LLC and Jakdyl LLC.

On August 15, 2019, Defendant appeared for his § 341(a) meeting of creditors, where he testified under oath about his assets and liabilities (the "Meeting"). At the Meeting, Defendant revealed that he had an interest in over 20 business entities as well as additional pending litigation, which he failed to disclose in his original schedules.

Following the Meeting, Plaintiff filed several motions for Fed. R. Bankr. P. ("FRBP") 2004 examinations, mainly against financial institutions where Defendant currently had (or had in the past) accounts and where Defendant's entities currently had (or had in the past) accounts.

On October 15, 2019, Defendant filed amended schedules and SOFA [Bankruptcy Case, doc. 56]. Defendant filed the amended schedules two months after the Meeting and after the Court granted several of Plaintiff's FRBP 2004 examinations.

The amended schedules and SOFA disclosed the following, which were not included in the original schedules: (i) transfer of $50,000 to Brian Burr; (ii) four litigation claims against third parties; $6,850 gross income in the last calendar year from operating a business; (iii) $150,000 received in the last year from a legal settlement; (iv) $300,000 property damage from the November 2018 Woolsey fire; (v) two transfers including a $550,000 transfer to Neil Harris in February 2019 as a business investment to be repaid and a $50,000 transfer to Brian Burr "temporarily" in May 2019; and (vi) an additional nine business entities which he had an interest within the four years prior to the

**United States Bankruptcy Court**
**Central District of California**
San Fernando Valley
Judge Victoria Kaufman, Presiding
Courtroom 301 Calendar

**Wednesday, April 29, 2020**                                                                                    **Hearing Room    301**

2:30 PM
**CONT...**    **Peter M. Seltzer**                                                                                                **Chapter 7**
petition date.

Defendant's July 2019 and August 2019 monthly operating reports ("MOR") reflect that beyond receipt of one insurance proceed check in the amount of $121,000, Defendant had no income. Those MORs also reflect that Defendant retained accounts under the name of 2305 LLC and ITM, neither of which were designated debtor-in-possession accounts, to transact for general personal expenses. The August 2019 MOR also reflects that Defendant withdrew $66,010 for a "price lift." Defendant has submitted no evidence that such funds were used for Woolsey fire damage repairs.

Defendant's September 2019 and October 2019 MORs reflect, among other things, that Defendant: (i) received another alleged insurance proceeds check in the amount of $134,162.70; (ii) made a cash withdrawal from the 2305 LLC account in the amount of $9,510 rendering the account closed; (iii) closed his Wells Fargo debtor-in-possession account and opened a new account at Union Bank; (iv) paid $15,000 to "tactical mitigation" for purported home damage repairs; and (v) paid an additional $15,000 for "price lift" for alleged home repairs.

Based on the discovery Plaintiff received from his FRBP 2004 examinations, many (if not all) of Defendant's entities are the alter ago of the other. Defendant often and freely moved funds in and out of his entities and into and out of Defendant's personal accounts to hide funds from creditors, and for his own personal use.

Defendant maintained a bank account, in his name, at Chase during the pendency of his bankruptcy case and immediately prior to the petition date. On May 21, 2019, Defendant received over $178,759 in insurance proceeds. Only $126,000 of these funds were deposited in the debtor-in-possession account, as Defendant withdrew $40,000 on May 29, 2019, an additional $9,866.64 on the day prior to the petition date, and a further $2,832 after the petition date (collectively, the "Insurance Proceed Transfers").

Between March 2019 and the petition date, Defendant made the following withdrawals and/or transfers from the 2305 LLC account, none of which were

# United States Bankruptcy Court
## Central District of California
### San Fernando Valley
### Judge Victoria Kaufman, Presiding
### Courtroom 301 Calendar

**Wednesday, April 29, 2020**                                                                 **Hearing Room    301**

2:30 PM
**CONT...**    **Peter M. Seltzer**                                                                                       **Chapter 7**

disclosed in Defendant's original or amended schedules: (i) March 18, 2019, wire to ETF Management in the amount of $150,000; (ii) April 19, 2019, wire to Harris Ritoff in the amount of $100,000; (iii) May 20, 2019, two withdrawals in the amounts of $28,000 and $7,000; and (iv) May 28, 2019, a withdrawal in the amount of $4,000 (collectively, the "Pre-Petition Transfers").

As of January 1, 2019, Defendant had $1,048,301.55 in the ITM and 2305 LLC bank accounts. About six months later, on the petition date, Defendant only had $128,857.76, which funds consisted solely of insurance proceeds. Defendant has not provided a justification or explanation for the dissipation of $900,000.

In his amended SOFA, Defendant asserts that he received $250,000 in income in 2018 and that ACG Industries was shut down in 2017. However, a review of the ITM bank account reveals that from March 2018 to May 2018, Defendant received $905,000 from ACG Industries. This demonstrates that Defendant received three times the amount of income disclosed in his amended SOFA and that ACG Industries was still operating in 2018.

Attached to the Complaint are the May Note [Exh. A], the October Note [Exh. B], bank statements [Exh. C] and the 2015 Email [Exh. D]. The May Note provides that Defendant "promises to get re payment to the order of [Plaintiff], or his successors in interest, the sum of EIGHT HUNDRED THOUSAND ($800,000.) DOLLARS through revenues generated by [ACC]. Along with securing an equity stake of 14% in the makers INVESTMENT in [ACC]…." The May Note further provides, that "[a]ll principal and accrued interest shall be due and payable on a cyclical basis based on disbursement made via K-1 by ACC to 'maker' within 30 days of 'maker' being paid." On May 22, 2014, Plaintiff and Defendant apparently signed the May Note.

The October Note provides that Defendant and ACC "promises to pay to the order of [Plaintiff], or his successors in interest, the sum of Eight hundred thousand ($800,000.) DOLLARS along with an equity interest of 14% in the makers…." The October Note provides that interest will accrue for three years, "payable annually on the anniversary date at the rate of five percent (1%) [*sic*]

**United States Bankruptcy Court**
**Central District of California**
San Fernando Valley
Judge Victoria Kaufman, Presiding
Courtroom 301 Calendar

**Wednesday, April 29, 2020**                                                                 **Hearing Room    301**

2:30 PM
**CONT...    Peter M. Seltzer**                                                                               **Chapter 7**

per annum." The October Note further provides that: "[a]ll principal and accrued interest shall be due and payable by Oct 1, 2017." On October 1, 2014, Plaintiff and Defendant apparently signed the October Note.

Based on the bank statements, on July 10, 2014, Plaintiff made a $300,000 transfer to ACC Industries, Inc., and on November 21, 2014, he made a $500,000 transfer to Jakdyl, Inc.

On February 4, 2020, Defendant filed the Motion [doc. 5]. In the Motion, Defendant argues that Plaintiff has failed to state a claim under Fed. R. Civ. P. 12(b)(6) and that Plaintiff has failed to plead the fraud-based claims with particularity as required by Fed. R. Civ. P. 9(b). On April 15, 2020, Plaintiff filed an opposition to the Motion (the "Opposition") [doc. 9]. On April 22, 2020, Defendant filed a reply to the Opposition (the "Reply") [doc. 11].

 II.    ANALYSIS

   A. *General Federal Rule of Civil Procedure ("Rule") 12(b)(6) Standard*

   A motion to dismiss [pursuant to Rule 12(b)(6)] will only be granted if the complaint fails to allege enough facts to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

   We accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the non-moving party. Although factual allegations are taken as true, we do not assume the truth of legal conclusions merely because they are cast in the form of factual allegations. Therefore, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss.

*Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (internal quotation marks omitted) (citing, *inter alia*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 127 S.Ct.

**United States Bankruptcy Court**
**Central District of California**
San Fernando Valley
Judge Victoria Kaufman, Presiding
Courtroom 301 Calendar

**Wednesday, April 29, 2020**                                                                                         Hearing Room      301

<u>2:30 PM</u>
**CONT...        Peter M. Seltzer                                                                                                         Chapter 7**

1955, 167 L.Ed. 2d 929 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed. 2d 868 (2009)).  "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (citations omitted).  "[F]acts must be alleged to sufficiently apprise the defendant of the complaint against him." *Kubick v. Fed. Dep. Ins. Corp. (In re Kubick)*, 171 B.R. 658, 660 (B.A.P. 9th Cir. 1994).

In evaluating a Rule 12(b)(6) motion, review is "limited to the contents of the complaint." *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754 (9th Cir. 1994).  However, without converting the motion to one for summary judgment, exhibits attached to the complaint, as well as matters of public record, may be considered in determining whether dismissal is proper. *See Parks School of Business, Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995); *Mack v. South Bay Beer Distributors, Inc.,* 798 F.2d 1279, 1282 (9th Cir. 1986).  Further, a court may consider evidence "on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the [Rule] 12(b)(6) motion." *Marder v. Lopez,* 450 F.3d 445, 448 (9th Cir. 2006) (internal quotation marks omitted).  "The court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Id.* (internal quotation marks omitted).

"A complaint that merely recites statutory language fails to state a claim under Rule 12(b)(6)." *In re Kubick*, 171 B.R. 658, 660 (B.A.P. 9th Cir. 1994).  This is because "mere statutory language does not plead facts sufficiently so that they may be answered or denied." *Id.*  "[F]acts must be alleged to sufficiently apprise the defendant of the complaint against him." *Id.*

Pursuant to Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged...." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993).  "[M]ere conclusory allegations of fraud are insufficient." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

**United States Bankruptcy Court**
**Central District of California**
**San Fernando Valley**
**Judge Victoria Kaufman, Presiding**
**Courtroom 301 Calendar**

**Wednesday, April 29, 2020**                                                          **Hearing Room    301**

<u>2:30 PM</u>
**CONT...      Peter M. Seltzer**                                                                  **Chapter 7**

Dismissal without leave to amend is appropriate when the court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

   *B.  11 U.S.C. § 523(a)(2)(A)*

Pursuant to 11 U.S.C. § 523(a)(2)(A), a bankruptcy discharge does not discharge an individual debtor from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by – false pretenses, a false representation, or actual fraud, other than a statement respecting a debtor's or an insider's financial condition."

To prevail on a § 523(a)(2)(A) claim, the Plaintiffs must prove by a preponderance of the evidence the following five elements:

   (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor;
   (2) knowledge of the falsity or deceptiveness of his statement or conduct;
   (3) an intent to deceive;
   (4) justifiable reliance by the creditor on the debtor's statement or conduct; and
   (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct

*In re Weinberg*, 410 B.R. 19, 35 (B.A.P. 9th Cir. 2009) (citing *In re Slyman*, 234 F.3d 1081, 1085 (9th Cir. 2000)).

   i.     *Misrepresentations with Knowledge of Falsity and Intent to Deceive*

Representations made without an intent to perform satisfy the first three requirements of § 523(a)(2)(A).  *In re Rubin*, 875 F.2d 755, 759 (9th Cir. 1989).  A promise also can be considered fraudulent when the promisor knew or should have known of his inability to perform.  *In re Barrack*, 217 B.R. 598, 606 (B.A.P. 9th Cir. 1998). A promise to perform in the future is not a false representation or false pretense unless the debtor did not have intent to perform at the time he made the representation.

**United States Bankruptcy Court**
**Central District of California**
San Fernando Valley
Judge Victoria Kaufman, Presiding
Courtroom 301 Calendar

**Wednesday, April 29, 2020**                                                                 **Hearing Room    301**

2:30 PM
**CONT...        Peter M. Seltzer**                                                                        **Chapter 7**

*Matter of Bercier*, 934 F.2d 689, 691-92 (5th Cir. 1991) ("A mere promise to be executed in the future is not sufficient to make a debt nondischargeable, even though there is no excuse for the subsequent breach.") (citations omitted).

  *ii.* *Justifiable Reliance*

To satisfy the reliance requirement of § 523(a)(2)(A), a plaintiff must show "justifiable" reliance, not "reasonable reliance." *Field v. Mans*, 516 U.S. 59, 74-75, 116 S. Ct. 437, 133 L. Ed. 2d 351 (1995). Justifiable reliance takes into account the "qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." *Id.* at 71.

  *iii.* *Proximate Causation/Damages*

Section 523(a)(2)(A) requires that the damage to the creditor be proximately caused by the debtor's fraud. *In re Sabban*, 600 F.3d 1219, 1223 (9th Cir. 2010) (explaining that the debtor will not receive a discharge of debts "resulting from" or "traceable" to fraud). "Further, as the Supreme Court explained in *Field,* a court may turn to the Restatement (Second) of Torts (1976), 'the most widely accepted distillation of the common law of torts,' for guidance on this issue." *In re Russell*, 203 B.R. 303, 313 (Bankr. S.D. Cal. 1996) (citing to *Field*, 516 U.S. at 70).

"Turning to the Restatement, proximate cause entails (1) causation in fact, which requires a defendant's misrepresentations to be a 'substantial factor in determining the course of conduct that results in [the plaintiff's] loss,' § 546; and (2) legal causation, which requires the plaintiff's loss to have been 'reasonably expected to result from the reliance,' § 548A. In determining the presence of proximate cause, however, courts must refrain from relying on speculation to determine whether and to what extent a creditor would have suffered a loss absent fraud. *Id*. (citing to *In re Siriani*, 967 F.2d 302, 306 (9th Cir. 1992)).

Here, the Complaint seeks nondischargeability under § 523(a)(2)(A) based on the following: (1) Defendant's statements in the state court action; and (2) Defendant's misrepresentations in the May Note and the October Note.

As concerns Defendant's statements in the state court action, Plaintiff has not

# United States Bankruptcy Court
## Central District of California
### San Fernando Valley
### Judge Victoria Kaufman, Presiding
### Courtroom 301 Calendar

**Wednesday, April 29, 2020**                                                                                     **Hearing Room    301**

<u>2:30 PM</u>
**CONT...        Peter M. Seltzer                                                                                               Chapter 7**

adequately alleged that Defendant made a representation to Plaintiff that ACC existed *prior* to Defendant's provision of the May Note and/or the October Note. Further, if years after Plaintiff made the pertinent monetary transfers, Defendant denied executing the May Note and the October Note, and claimed the 2015 Email was altered, that does not establish that Defendant made false representations or omissions *prior* to signing either or both of the notes. *See In re Lee*, 536 B.R. 848, 855 (Bankr. N.D. Cal. 2015) ("The alleged misrepresentation must have occurred at the inception of the debt as an inducement for the debt."). Consequently, the statements made in the state court action (as allegedly made by Defendant) do not satisfy the elements of a claim under § 523(a)(2)(A).

The same is true for the statements made in the 2015 Email. That email was written in August 2015, i.e., *after* Plaintiff allegedly made the pertinent monetary transfers to Defendant's entities. Accordingly, that email (as an alleged representation by Defendant) does not satisfy the elements of a claim under § 523(a)(2)(A).

As concerns the representations in the May Note, the Complaint does not make sufficient allegations regarding whether the condition precedent was met, *i.e.*, that ACC generated revenue and that disbursements were made to Defendant within the pertinent time frame, *i.e.*, before the October Note went into effect. Further, the May Note contains no deadline for the payment in full of any accrued interest and principal.

As concerns the representations in and about the May Note and the October Note, the Complaint has not plead with particularity the circumstances constituting fraud as required by Rule 9(b). The Complaint does not sufficiently identify what statements or representations Defendant made to Plaintiff *before* Plaintiff transferred the pertinent funds in July 2014 and November 2014, and when Defendant did so. Similarly, the Complaint does not articulate on which statements or representations Plaintiff relied.

Consequently, as to the § 523(a)(2) cause of action, the Court will grant the Motion with leave to amend.

   *C. 11 U.S.C. § 523(a)(4)*

Pursuant to 11 U.S.C. § 523(a)(4), a bankruptcy discharge does not discharge an individual debtor from any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

**United States Bankruptcy Court**
**Central District of California**
San Fernando Valley
Judge Victoria Kaufman, Presiding
Courtroom 301 Calendar

**Wednesday, April 29, 2020**                                                                                      **Hearing Room    301**

2:30 PM
**CONT...**      **Peter M. Seltzer**                                                                                              **Chapter 7**

A debt is nondischargeable for fraud or defalcation while acting in a fiduciary capacity "where (1) an express trust existed, (2) the debt was caused by fraud or defalcation, and (3) the debtor acted as a fiduciary to the creditor at the time the debt was created." *In re Niles*, 106 F.3d 1456, 1459 (9th Cir. 1997).

        *i.*     *Existence of Trust/Fiduciary Relationship*

Whether a relationship is a fiduciary one within the meaning of § 523(a)(4) is a question of federal law. *Ragsdale v. Haller*, 780 F.2d 794, 795 (9th Cir. 1986); *see also In re Cantrell*, 269 B.R. 413, 420 (B.A.P. 9th Cir. 2001) ("The definition of 'fiduciary capacity' under § 523(a)(4) is governed by federal law."). In the context of dischargeability, the fiduciary relationship must arise from an express or technical trust that was imposed before and without reference to the wrongdoing that caused the debt. *Ragsdale*, 780 F.2d at 796; *see also In re Stern*, 403 B.R. 58, 66 (Bankr. C.D. Cal. 2009) ("In order for the debt to be actionable for nondischargeability, the debtor must have been a trustee before the alleged wrong and without reference thereto; the debtor must have already been a trustee before the debt was created."); *Cantrell*, 269 B.R. at 420 ("Only relationships arising from express or technical trusts qualify as fiduciary relationships under § 523(a)(4)."). Under § 523(a)(4), a court must consider state law to ascertain whether there is the required express or technical trust. *In re Honkanen*, 446 B.R. 373, 379 (B.A.P. 9th Cir. 2011).

"A trust under California law may be formed by express agreement, by statute, or by case law." *Cantrell*, 269 B.R. at 420. An express trust under California law requires the following five elements: (1) present intent to create a trust; (2) a trustee; (3) trust property; (4) a proper legal purpose; and (5) a beneficiary. *Honkanen*, at 379 n.6 (citing Cal. Prob. Code §§ 15201–15205). A technical trust under California law is one "arising from the relation of attorney, executor, or guardian, and not to debts due by a bankrupt in the character of an agent, factor, commission merchant, and the like." *Id.*, at n.7 (quoting *Royal Indemnity Co. v. Sherman*, 269 P.2d 123, 125 (Cal. Ct. App. 1954)). Additionally, "[t]rusts arising as remedial devices to breaches of implied or express contracts—such as resulting or constructive trusts—are excluded, while statutory trusts that bear the hallmarks of an express trust are not." *Id.* (citing *In re Pedrazzini*, 644 F.2d 756, 759 (9th Cir. 1981)).

**United States Bankruptcy Court**
**Central District of California**
San Fernando Valley
**Judge Victoria Kaufman, Presiding**
**Courtroom 301 Calendar**

---

**Wednesday, April 29, 2020**                                                                                      **Hearing Room    301**

2:30 PM
**CONT...**      **Peter M. Seltzer**                                                                                               **Chapter 7**
      ii.      *Fraud*

Under § 523(a)(4), fraud refers to actual fraud. *Honkanen*, 446 B.R. at 382 (citing *In re Roussos*, 251 B.R. 86, 91 (B.A.P. 9th Cir. 2000)). This involves the "conscious misrepresentation, or concealment, or non-disclosure of a material fact which induces the innocent party to enter into a contract." *Id*. at 383. The elements of actual fraud include the following:

> (1) defendant made a misrepresentation, concealment, or non-disclosure of a material fact; (2) defendant had knowledge that what he was saying was false; (3) defendant intended to induce plaintiff's reliance; (4) plaintiff justifiably relied; and (5) plaintiff suffered damage as a result.

*Id*.

      iii.     *Embezzlement or Larceny*

"Embezzlement" within the meaning of § 523(a)(4) requires three elements: (1) property rightfully in the possession of the non-owner debtor, (2) the non-owner's misappropriation of the property to a use other than that for which it was entrusted, and (3) circumstances indicating fraud. *In re Littleton*, 942 F.2d 551, 555 (9th Cir. 1991).  "The elements of larceny differ only in that a larcenous debtor has come into possession of funds wrongfully." *In re Mickens*, 312 B.R. 666, 680 (Bankr. N.D. Cal. 2004).  A finding of larceny requires proof of the debtor's fraudulent intent in taking the creditor's property.  *In re Sokol*, 170 B.R. 556, 560 (Bankr. S.D.N.Y 1994).

"Fraudulent appropriation requires an intent to deprive, which can be inferred from the conduct of the person accused and from the circumstances of the situation." *Savonarola v. Beran*, 79 B.R. 493, 496 (Bankr. N.D. Fla. 1987).

For purposes of embezzlement and larceny, a fiduciary relationship is not required. *Littleton*, 942 F.2d at 555.

Here, the Complaint does not include sufficient allegations under § 523(a)(4). Plaintiff has not plausibly alleged that an express or technical trust, which was imposed before

# United States Bankruptcy Court
## Central District of California
### San Fernando Valley
### Judge Victoria Kaufman, Presiding
### Courtroom 301 Calendar

**Wednesday, April 29, 2020**                                                          **Hearing Room    301**

<u>2:30 PM</u>
**CONT...        Peter M. Seltzer                                                                             Chapter 7**

and without reference to the wrongdoing that caused the debt, ever existed. Consequently, Plaintiff has not sufficiently set forth a fiduciary relationship, as defined under § 523(a)(4).

In the Complaint, Plaintiff alleges that Defendant agreed to act as Plaintiff's agent for purposes of ensuring that the Principal was repaid to Plaintiff in accordance with the May Note and the October Note. As stated above, any such agreement would not create the required technical trust within the purview of § 523(a)(4). Moreover, Plaintiff characterizes the debt as a loan. Accepting a loan, without more, does not create a fiduciary relationship. *See In re Mbunda*, 484 B.R. 344 (B.A.P. 9th Cir. 2012).

In addition, Plaintiff does not allege embezzlement or larceny. Plaintiff does not allege that Defendant misappropriated the Principal to a use other than that to which he and Defendant agreed. Similarly, Plaintiff does not allege that Defendant came into possession of the Principal wrongfully; rather Plaintiff admits he agreed to make the loan to Defendant. Consequently, Plaintiff's claim under § 523(a)(4) is insufficient.

As a result, as to the § 523(a)(4) cause of action, the Court will grant the Motion. Because it appears that the deficiencies could be cured by an amendment, the Court will provide leave to amend.

### D.    11 U.S.C. § 523(a)(6)

11 U.S.C. § 523(a)(6) states that a discharge under 11 U.S.C. § 727 does not discharge an individual debtor from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." As in any § 523(a) action, the plaintiff bears the burden of proof by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

####        i.        *Willfulness*

Demonstrating willfulness requires a showing that defendant intended to cause the injury, *not* merely the acts leading to the injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61–62, 118 S.Ct. 974, 140 L.Ed. 2d 90 (1998). Thus, debts "arising from recklessly or negligently inflicted injuries do not fall within the compass of §523(a)(6)." *Id.* at 64.

# United States Bankruptcy Court
# Central District of California
## San Fernando Valley
## Judge Victoria Kaufman, Presiding
## Courtroom 301 Calendar

**Wednesday, April 29, 2020**                                                                 **Hearing Room    301**

<u>2:30 PM</u>
**CONT...        Peter M. Seltzer                                                                                  Chapter 7**

It suffices, however, if the debtor knew that harm to the creditor was "substantially certain." *In re Su*, 290 F.3d 1140, 1145-46 (9th Cir. 2002); *In re Jercich*, 238 F.3d 1202, 1208 (9th Cir. 2001) ("the willful injury requirement of § 523(a)(6) is met when it is shown either that debtor had *subjective* motive to inflict injury *or* that the debtor believed that injury was substantially certain to occur as a result of his conduct") (emphasis in original).

    *ii.    Maliciousness*

Under § 523(a)(6), the injury must also be the result of maliciousness. *Su*, 290 F.3d at 1146. Maliciousness requires (1) a wrongful act; (2) done intentionally; (3) which necessarily causes injury; (4) without just cause or excuse. *Id*. at 1147. Maliciousness does not require "personal hatred, spite, or ill-will." *In re Bammer*, 131 F.3d 788, 791 (9th Cir. 1997).

Section 523(a)(6) generally applies to torts rather than to contracts. An intentional breach of contract generally will not give rise to a nondischargeable debt, unless it is accompanied by tortious conduct which results in willful and malicious injury. *Jercich*, at 1205; *Lockerby v. Sierra*, 555 F.3d 1038, 1040 (9th Cir. 2008) ("an intentional breach of contract cannot give rise to nondischargeability under § 523(a)(6) unless it is accompanied by conduct that constitutes a tort under state law").

Here, Plaintiff makes a claim under § 523(a)(6) based on conversion. "Conversion is the wrongful exercise of dominion over the property of another." *Farmers Insurance Exchange v. Zerin*, 53 Cal. App. 4th 445, 451 (Ct. App. 1997). Under California law the elements of conversion are plaintiff's ownership or right to possession of property at the time of the conversion, defendant's wrongful act or disposition of his property right, and consequent damages. *Ehrle*, 189 B.R. 771, 776 (B.A.P. 9th Cir. 2002) (citing *In re Saylor*, 178 B.R. 209, 214 (B.A.P. 9th Cir. 1995)). "[A] mere contractual right of payment, without more, will not suffice" to support a claim for conversion. *Farmers Ins. Exchange v. Zerin*, 53 Cal. App. 4th 445, 452 (1997).

At the motion to dismiss stage, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P 9(b). The Complaint alleges that Defendant willfully and maliciously injured Plaintiff, that Defendant intended the consequences of his actions and that injury was substantially certain to result from Defendant's conduct. Thus, the Complaint sufficiently alleges the intent elements of §

**United States Bankruptcy Court**
**Central District of California**
San Fernando Valley
**Judge Victoria Kaufman, Presiding**
**Courtroom 301 Calendar**

**Wednesday, April 29, 2020**                                                                        **Hearing Room    301**

<u>2:30 PM</u>
**CONT...    Peter M. Seltzer                                                                                        Chapter 7**
523(a)(6).

However, the Complaint fails to allege the elements of conversion. Plaintiff alleges that he loaned the Principal to Defendant, and that Defendant was to repay the Principal to Plaintiff based on the terms in the notes. Plaintiff does not allege that Defendant used the Principal in any way other than to which the parties agreed. Further, Plaintiff cannot show that funds generated by, or received from ACC, were *Plaintiff's* property. Plaintiff may have had a contractual right to payment from revenues generated by ACC, but that does not turn ACC's revenues into Plaintiff's property. As stated above, a mere contractual right to payment, without more, will not support a claim for conversion.

As such, as to the § 523(a)(6) cause of action, the Court will grant the Motion. Because the deficiencies possibly could be cured by an amendment, the Court will provide leave to amend.

    **E.  *11 U.S.C. § 727(a)(2)***

11 U.S.C. § 727(a)(2) provides that a court shall grant a debtor a discharge unless "the debtor, with intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property ... has transferred, removed, destroyed, mutilated, or concealed ... (A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition."

"Two elements comprise an objection to discharge under § 727(a)(2)(A): 1) a disposition of property, such as transfer or concealment, and 2) a subjective intent on the debtor's part to hinder, delay or defraud a creditor..." *In re Beauchamp*, 236 B.R. 727, 732 (B.A.P. 9th Cir. 1999). The transfer must occur within one year prepetition. *In re Lawson*, 122 F.3d 1237, 1240 (9th Cir. 1997). Lack of injury to creditors is irrelevant under § 727(a)(2). *In re Bernard*, 96 F.3d 1279, 1281–82 (9th Cir. 1996).

"The standard for denial of discharge under § 727(a)(2)(B) is the same as § 727(a)(2)(A), but the disposition must be of estate property occurring after the petition date." *In re Miller*, 2015 WL 3750830, at *3 (Bankr. C.D. Cal. June 12, 2015).

Intent may be inferred from the actions of the debtor. *In re Devers*, 759 F.2d 751, 753–54 (9th Cir. 1985). The necessary intent under § 727(a)(2) "may be established

**United States Bankruptcy Court**
**Central District of California**
San Fernando Valley
Judge Victoria Kaufman, Presiding
Courtroom 301 Calendar

**Wednesday, April 29, 2020**                                                                                                  **Hearing Room    301**

2:30 PM
**CONT...    Peter M. Seltzer                                                                                                           Chapter 7**

by circumstantial evidence, or by inferences drawn from a course of conduct." *In re Adeeb*, 787 F.2d 1339, 1343 (9th Cir.1986) (quoting *Devers*, 759 F.2d at 753–54).

Here, the Complaint sufficiently states a claim under § 727(a)(2). Plaintiff alleges that Defendant, with the intent to hinder, delay or defraud Plaintiff, transferred and/or abandoned all or part of the Pre-Petition Transfers and the Insurance Proceed Transfers. These transfers occurred within one year prior to the petition date or after the petition date. Plaintiff also alleges that within the six months prior to the petition date, Defendant dissipated $900,000 in the ITM and 2305 LLC bank accounts without explanation or justification. As stated above, at the motion to dismiss stage, intent may be generally alleged.

In the Motion, Defendant appears to argue that the Pre-Petition Transfers and the Insurance Proceed Transfers are not property of the estate. As concerns the Insurance Proceed Transfers, under 11 U.S.C. § 541(a)(1), the casualty insurance policy itself is property of the estate; so too, under 11 U.S.C. § 541(a)(6), are the proceeds from that policy. 11 U.S.C. § 541(a)(6) (property of the estate includes proceeds, product, offspring, rents and/or profits of or from property of the estate). *See also In re Hoffpauir*, 258 B.R. 447 (Bankr. D. Idaho 2001).

As concerns the Pre-Petition Transfers, these were all transfers or withdrawals from the 2305 LLC bank account which took place between March 2019 and May 2019. The Complaint references Defendant's MORs, to which Defendant attached the bank statements of 2305 LLC. Based on those bank statements, post-petition, Defendant used 2305 LLC's account to pay his general living expenses, *i.e.*, gas, utilities, restaurants and car payments. In essence, Plaintiff is alleging that Defendant significantly disregarded corporate formalities, such that the assets of 2305 LLC constitute Defendant's assets.

At this stage, Plaintiff has alleged sufficient facts to state a claim that is plausible on its face. Accordingly, as to the § 727(a)(2) cause of action, the Court will deny the Motion.

    **F.  *11 U.S.C. § 727(a)(4)(A)***

Pursuant to 11 U.S.C. § 727(a)(4)(A), the court shall not grant a debtor a discharge if "the debtor knowingly and fraudulently, in or in connection with the case—made a

**United States Bankruptcy Court**
**Central District of California**
San Fernando Valley
Judge Victoria Kaufman, Presiding
Courtroom 301 Calendar

**Wednesday, April 29, 2020**                                                                 Hearing Room    301

2:30 PM
**CONT...        Peter M. Seltzer**                                                                             Chapter 7

false oath or account." 11 U.S.C. § 727(a)(4)(A). "The fundamental purpose of § 727(a)(4)(A) is to insure that the trustee and creditors have accurate information without having to conduct costly investigations." *In re Retz*, 606 F.3d 1189, 1196 (9th Cir. 2010) (internal quotations and citation omitted).

To prevail on a claim under § 727(a)(4)(A), the plaintiff must show, by a preponderance of the evidence, that: (1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently. *Id*., at 1197.

      i.    *False Oath*

"The requisite false oath may involve either an affirmatively false statement or an omission from the debtor's schedules."  *Searles*, 317 B.R. at 377 (citing *In re Wills*, 243 B.R. 58, 62 (B.A.P. 9th Cir. 1999)).

      ii.    *Materiality*

"A false statement is material if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property." *Wills*, 243 B.R. at 62; s*ee also In re Guadarrama*, 284 B.R. 463, 473 (C.D.Cal. 2002) ("A false statement or omission is material if it concerns information that would aid in understanding the debtor's financial affairs.")  "[A]n omission or misstatement relating to an asset that is of little value or that would not be property of the estate is material if the omission or misstatement detrimentally affects administration of the estate." *Wills*, 243 B.R. at 63.

      iii.    *Knowingly and Fraudulently*

"A debtor acts knowingly if he or she acts deliberately and consciously." *Retz*, 606 F.3d at 1198 (internal quotation marks omitted).  To demonstrate fraudulent intent, a plaintiff has "the burden of showing that: (1) [defendant] made the representations [*e.g.*, a false statement or omission in bankruptcy schedules]; (2) . . . at the time *he knew they were false;* [and] (3) . . . he made them with the *intention and purpose of deceiving the creditors*." *Id*., at 1198-99 (emphasis in original; internal quotations omitted).

**United States Bankruptcy Court**
**Central District of California**
San Fernando Valley
Judge Victoria Kaufman, Presiding
Courtroom 301 Calendar

**Wednesday, April 29, 2020**                                                                 Hearing Room    301

2:30 PM
**CONT...**       **Peter M. Seltzer**                                                                      **Chapter 7**

"Intent is usually proven by circumstantial evidence or by inferences drawn from the debtor's conduct." *Id*., at 1199. "[M]ultiple omissions of material assets or information may well support an inference of fraud if the nature of the assets or transactions suggests that the debtor was aware of them at the time of preparing the schedules and that there was something about the assets or transactions which, because of their size or nature, a debtor might want to conceal." *In re Coombs*, 193 B.R. 557, 565-66 (Bankr. S.D. Cal. 1996). "The fact of prompt correction of an inaccuracy or omission may be evidence probative of lack of fraudulent intent." *In re Searles*, 317 B.R. 368, 377 (B.A.P. 9th Cir. 2004) *aff'd*, 212 F. App'x 589 (9th Cir. 2006).

Here, the Complaint contains sufficient allegations under § 727(a)(4)(A). In the Complaint, Plaintiff alleges that Defendant made numerous false oaths in his original schedules and SOFA, including, among other things, omitting the entities in which Defendant had an interest, the loss from the Woolsey fire, the amount of income Defendant received from operating a business and the transfers Defendant made within two years prior to the petition date. Defendant's amended schedules and SOFA, which Defendant filed after Plaintiff's 2004 examinations were granted, indicated that Defendant did not accurately disclose his financial information in the original schedules and SOFA. These inaccuracies or omissions bear a relationship to Defendant's business transactions or estate, or concern the discovery of assets, business dealings, or the existence and disposition of Defendant's property.

In addition, the Complaint alleges that Defendant knowingly and fraudulently failed to list assets and financial information in his original schedules and SOFA. As previously noted, Defendant's intent and state of mind may be generally alleged.

These allegations are sufficient to state a claim under § 727(a)(4)(A). Consequently, as to the § 727(a)(4)(A) cause of action, the Court will deny the Motion.

    **G.  *11 U.S.C. § 727(a)(5)***

Pursuant to 11 U.S.C. § 727(a)(5), a debtor's discharge will be denied if "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." Under § 727(a)(5), the objecting party must demonstrate that:

# United States Bankruptcy Court
## Central District of California
### San Fernando Valley
### Judge Victoria Kaufman, Presiding
### Courtroom 301 Calendar

**Wednesday, April 29, 2020**     Hearing Room   301

2:30 PM
**CONT...**     **Peter M. Seltzer**     Chapter 7

(1) debtor at one time, not too remote from the bankruptcy petition date, owned identifiable assets; (2) on the date the bankruptcy petition was filed or order of relief granted, the debtor no longer owned the assets; and (3) the bankruptcy pleadings or statement of affairs do not reflect an adequate explanation for the disposition of the assets.

*Retz*, 606 F.3d at 1205.

Here, the Complaint does not make sufficient allegations under § 727(a)(5). Plaintiff alleges that Defendant dispensed of $105,520 *post-petition* without evidence that such funds were used for home repairs. However, Ninth Circuit precedent limits § 727(a)(5) to a debtor's inexplicable, *pre-petition* loss of assets. *In re Choy*, 569 B.R. 169, 184-185 (Bankr. N.D. Cal. 2017). Accordingly, as to the § 727(a)(5) cause of action, the Court will grant the Motion, with leave to amend.

### III. CONCLUSION

The Court will grant the Motion as to the claims under §§ 523(a)(2), (a)(4) and (a)(6) and § 727(a)(5), with leave to amend, and will deny the Motion as to the balance of the claims.

Plaintiff will have 14 days from the date of the hearing to file and serve on Defendant and his counsel an amended complaint, or to file and serve notice on Defendant and his counsel that Plaintiff will not do so.

Plaintiff must submit the order within seven (7) days.

**Party Information**

**Debtor(s):**

    Peter M. Seltzer     Represented By
        Michael H Raichelson
        Kathleen C Hipps

# United States Bankruptcy Court
# Central District of California
### San Fernando Valley
### Judge Victoria Kaufman, Presiding
### Courtroom 301 Calendar

**Wednesday, April 29, 2020**      Hearing Room    **301**

<u>2:30 PM</u>
**CONT...    Peter M. Seltzer**     Chapter 7

**<u>Defendant(s):</u>**

    Peter M. Seltzer        Represented By
           Kathleen C Hipps

**<u>Plaintiff(s):</u>**

    Darren Kessler        Represented By
           Craig G Margulies
           Noreen A Madoyan

**<u>Trustee(s):</u>**

    Diane C Weil (TR)        Represented By
           David Seror
           Jorge A Gaitan